# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:15-CR-197(1)-ALM-CAN |
| | § | |
| IVAN SILVA MENDOZA (1), | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant Ivan Silva Mendoza's ("Defendant") Motion to Suppress [Dkt. 29]. On February 16, 2016, the undersigned conducted a hearing and heard oral argument from both the Government and Defendant. After considering the Motion, the Response, all relevant filings, and the oral argument of counsel the Court recommends that Defendant's Motion [Dkt. 29] be **DENIED**.

### BACKGROUND

On October 26, 2015, Defendant and Cesar Acduel Aguilar Patino ("Mr. Patino") were pulled over for multiple traffic violations by Lewisville Police Officer Fredrick ("Officer Fredrick") [Dkt. 29 at 1, ¶ 3; Dkt. 33 at 1]. Mr. Patino was driving the vehicle and Defendant was the passenger [Dkt. 29 at 1, ¶ 3]. Mr. Patino was arrested because he had only a Mexico identification card and no Texas driver's license [Dkt. 33 at 1]. Upon search of the vehicle, Officer Fredrick found a bag containing close to $200,00.00 in cash behind the driver's seat [Dkt. 29 at 1, ¶ 3; Dkt. 33 at 1]. Officer Fredrick contacted Special Agent Tony Jasso with Homeland Security Investigations ("Agent Jasso") who subsequently arrived at the location of the traffic stop [Dkt. 33 at 2]. Mr. Patino cooperated – telling Agent Jasso that the currency

REPORT AND RECOMMENDATION – Page 1

found in the vehicle represented proceeds from the sale of drugs – and then further volunteered to take Agent Jasso to an apartment in Dallas where Mr. Patino indicated seven kilograms of methamphetamine were located. *Id.*

Mr. Patino took the law enforcement officers/agents to the apartment, located at 3454 Banning Drive, Dallas, Texas, [Dkt. 29 at 1, ¶ 3] behind a house owned by Erica Munoz-Cornelio ("Ms. Munoz-Cornelio") and Maria Rita Solis ("Ms. Solis") (collectively the "Landlords") [Dkt. 33 at 2]. Upon arrival, Ms. Munoz-Cornelio told the officers the apartment was rented to Defendant and Mr. Patino; she produced a copy of the signed, notarized lease agreement bearing each of their signatures, and she also identified both Defendant and Mr. Patino in photographs. [Dkt. 33 at 2]. The Landlords told the officers that although Mr. Patino was on the lease he did not live in the apartment, but was there frequently to pick up Defendant. *Id.* Mr. Patino then verbally consented to a search of the apartment. *Id.* Ms. Munoz-Cornelio advised the officers that she intended to immediately inspect the apartment because the lease agreement had a "no tolerance" policy with respect to drugs, (i.e. the use of illegal drugs on the premises would lead to immediate eviction). *Id.* Ms. Munoz-Cornelio went into the apartment; none of the officers entered the premises [Dkt. 29 at 2, ¶ 3]. Not long after, Ms. Solis returned to the driveway with a bag of what was believed to be methamphetamine [Dkt. 33 at 3]. Ms. Solis told the officers there were several similar bags remaining in the apartment. *Id.*

Special Agent Mark Hardman, with Homeland Security Investigations, ("Agent Hardman") subsequently presented a search warrant affidavit to Dallas County District Judge Brandon Birmingham ("Judge Birmingham"). *Id.* The proposed warrant described the information received from each of Mr. Patino and the Landlords. *Id.* Judge Birmingham signed the search warrant authorizing the search of the apartment located behind the house at

3454 Banning Drive, Dallas, Texas. *Id*. at 3. Officers executed the warrant and during the search located bags that field tested positive for methamphetamine, a notebook, a digital scale, and two cell phones. *Id.*

On January 18, 2016, Defendant filed his Motion to Suppress seeking to suppress any and all evidence seized from the subject apartment [Dkt. 29]. On February 11, 2016, the Government filed its Response in Opposition to Defendant's Motion to Suppress [Dkt. 33]. On February 16, 2016, the Court heard oral argument on Defendant's Motion to Suppress ("Hearing") [Dkt. 35]. At Hearing, Agent Hardman and Agent Jasso testified for the Government. *Id*. Defendant presented no witnesses. The Court permitted Defendant's counsel, upon his request at Hearing, to provide further briefing regarding his assertion that any information obtained from Mr. Patino could not establish probable cause and/or act as an independent source because his statements to law enforcement had not been previously corroborated before the date of the search of the apartment. *Id*. On February 17, 2016, Defendant timely filed his Supplemental Brief to his Motion to Suppress [Dkt. 37], and on February 23, 2016, the Government filed its Response to same [Dkt. 39].

## ANALYSIS

In his Motion to Suppress, Defendant asserts that his Fourth, Fifth, Sixth, and Fourteenth Amendment rights were violated [Dkt. 29 at 1, ¶ 2].[1] Specifically, Defendant argues: (1) his apartment was unlawfully searched by his Landlords (acting in concert with the officers) in violation of the Fourth Amendment; (2) any evidence found as a result of the illegal search is inadmissible as fruit of the poisonous tree and must be suppressed; and, (3) no applicable exception exists [Dkt. 29 at 1, ¶ 2]. In response, the Government advances that the Landlords'

---

[1] While Defendant's Motion to Suppress asserts that his Fourth, Fifth, Sixth, and Fourteenth Amendment rights were violated, Defendant has briefed and presented in oral argument only the alleged violation of his Fourth Amendment rights [*see* Dkts. 29; 37]. Accordingly, the Court addresses the Fourth Amendment arguments only.

actions were legal; however, even if the Court were to assume their search was illegal, the search warrant remains viable based on Mr. Patino's credible, corroborated information [Dkt. 33 at 3-4]. More specifically, the Government contends that: (1) the good-faith exception applies because there are no facts indicating that the agents would have known that the search was illegal despite Judge Birmingham's authorization; (2) even if the good-faith exception does not apply, the warrant was supported by probable cause because illegally seized evidence may be redacted from a search warrant affidavit; (3) the independent source and inevitable discovery doctrines apply in this case, and thus the actions of the Landlords are further irrelevant; and (4) in any event, Mr. Patino consented to the search of the apartment [*see generally* Dkt. 33]. The Court analyzes each of the Parties arguments herein.

## I. *The Landlords' Search*

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "Generally, the exclusionary rule prohibits the introduction of evidence at trial that is derivative of an unconstitutional search or seizure." *United States v. Spears*, 31 F. Supp. 3d 869, 872-73 (N.D. Tex. 2014) (citing *United States v. Hernandez*, 670 F.3d 616, 620 (5th Cir. 2012)). However, a violation of the Fourth Amendment does not necessarily mean that the exclusionary rule applies. *Herring v. United States*, 555 U.S. 135, 140 (2009) ("We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation.").

Defendant contends that his "apartment was searched unlawfully by police and his landlord acting in concert together, with consent only from the landlord for entry, in violation of the Fourth Amendment and *Chapman v. United States*... [and, thus] [a]ny evidence found in as a result of this illegal search ...are in admissible as fruit of the poisonous tree..." [Dkt. 29 at 1, ¶ 2].

Again, the Government advances that the search of the apartment by the Landlords was not illegal (and, in fact, is irrelevant)[2] [Dkt. 33 at 3-5]; however, even were the Court to assume the Landlords' search was improper and also that no good faith exists, the search warrant – when wholly purged of the Landlords' search of the apartment – is still supported by probable cause.[3]

This is where the Court begins its analysis. Assuming *arguendo* that the Landlords' search was improper and the good-faith exception does not apply, the Court considers whether probable cause still exists. In this Circuit, when a search is conducted pursuant to a warrant that is based on illegally obtained information, the Court is to consider the warrant with the illegally obtained information excluded and determine, based on the remaining information, whether probable cause nevertheless existed. *See United States v. Cavazos*, 288 F.3d 706, 710 (5th Cir. 2002); *United States v. Looney*, No. 7:05-CR-005, 2005 WL 2693003, at *4 (N.D. Tex. Oct. 18, 2005) ("[T]he court must then excise the tainted language from the affidavit and determine whether the remaining portion would have established the necessary probable cause for the warrant to issue."). Whether probable cause exists requires a "practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit, there is a fair probability that

---

[2] Specifically, the Government argues that while it "does not concede that the landlord's actions were illegal; they are just irrelevant" because the "Fourth Amendment's protections against unreasonable searches and seizures proscribes only governmental actions, and it is wholly inapplicable to a search or seizure, even an unreasonable one, affected by a private individual not acting as an agent of the government or with participation or knowledge of any government official [Dkt. 33 at 8 n.1 (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)].

[3] "Under the good-faith exception, evidence obtained during the execution of a warrant later determined to be deficient is admissible nonetheless, so long as the executing officers' reliance on the warrant was objectively reasonable and in good faith." *Payne*, 341 F.3d at 399 (citing *United States v. Leon*, 468 U.S. 897 (1984)). Normally, the issuance of a warrant by a magistrate suffices to establish an officers' good faith. *United States v. Pena-Rodriquez*, 110 F.3d 1120, 1130 (5th Cir. 1997). But good faith cannot be established if one of the four circumstances is present:
> (1) [i]f the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth; (2) where the issuing magistrate/judge wholly abandoned his or her judicial role; (3) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid.

*Payne*, 341 F.3d at 399-400 (quoting *United States v. Webster*, 960 F.2d 1301, 1307 n.4 (5th Cir. 1992)).

contraband or evidence of a crime will be found in a particular place." *Id.* (internal quotation marks omitted). Accordingly, here the Court must look to the totality of the circumstances to determine whether there was probable cause based on the information remaining in the search warrant affidavit after excluding the search by the Landlords. *See United States v. Fields*, 456 F.3d 519, 523 (5th Cir. 2006) (citing *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983)). Notably, Defendant does not argue that all of the information obtained from the Landlords violated his Fourth Amendment rights (i.e. the Landlords' identification of Defendant and Mr. Patino as their tenants). Defendant's objection is limited to Ms. Munoz-Cornelio's search of the apartment [Dkt. 29 at 2, ¶ 3]. Specifically, the search warrant states: "[Ms.] Solis returned to the agents waiting outside the dwelling carrying a large clear plastic bag with [sic] contained approximately 2 lbs of a crystal substance, believed to be methamphetamine. [Ms.] Solis stated there were several more bags in a back room of said dwelling" [Dkt. 33-2 at 3]. Defendant argues these statements must be stricken and that, after striking this information from the Landlords' search from the affidavit, "there is not enough information to support a reasonable belief that probable cause existed..." [Dkt. 37 at 3].

After purging those statements related to the Landlords' search, the search warrant affidavit contains the following information in relevant part:

1. During an inventory search of the vehicle for impound, a bag containing over $100,000 dollars, rubber banded into unknown increments, was found;

2. Mr. Patino, after being Mirandized and against his penal interest, agreed to speak with Agent Jasso;

3. Mr. Patino stated he knew the money was from the sale of drugs, advised that he wanted to cooperate, and informed Agent Jasso that he knew seven kilograms of methamphetamine was located at 3454 Banning Drive, Dallas, Texas;

4. Ms. Munoz-Cornelio advised the agents that she rented the apartment behind her residence to Defendant and Mr. Patino, and provided the agents with a lease signed by Mr. Patino and Defendant; and

5. Ms. Munoz-Cornelio identified both Mr. Patino and Defendant through photographs and stated they were the two men who signed the lease.

[Dkt. 33-2 at 2]. The Court finds that – even after striking the allegedly tainted information regarding the Landlords' search of Defendant's apartment from the affidavit – there is still ample probable cause to support the warrant based upon Mr. Patino's statements and the Landlords' identification of both Mr. Patino and Defendant.

## II. *Mr. Patino's Statements*

Defendant advances a second argument for lack of probable cause. Defendant contends that Mr. Patino's statements are insufficient to establish probable cause because Mr. Patino was a first time informant, and his statements are uncorroborated and conclusory because he does not say how or why he knew seven kilograms of methamphetamine was located at 3454 Banning Drive, Dallas, Texas [Dkt. 37 at 1-2]. The Government argues that Mr. Patino constitutes a credible source; he provided information to the agents against his own penal interest, and the agents corroborated Mr. Patino's information – all of which indicate probable cause was clearly established [Dkt. 33 at 10; Dkt. 39 at 2]. The Court agrees; under applicable law Mr. Patino is a credible source and his statements are sufficient to establish probable cause here.

Mr. Patino, after being Mirandized, agreed to cooperate with Agent Jasso [*see* Dkt. 29 at 1, ¶ 3; Dkt. 33 at 2]. Mr. Patino then admitted – against his penal interest – that the money the agents recovered was from the sale of drugs [Dkt. 33 at 2; Dkt. 33-2 at 2], a fact which, while not determinative of probable cause, weighs in favor of the trustworthiness of the information provided. *See, e.g., United States v. Steele*, 353 F. App'x 908, 910 (5th Cir. 2009) ("[T]he informant admitted to purchasing cocaine from Steele, an admission against penal interest

[which adds] to the informant's credibility."); *United States v. Ashley*, 569 F.2d 982 (5th Cir. 1978) ("such an admission is one of many cumulating factors to be considered" in determining probable cause).

The fact that Mr. Patino was a first-time informant does not automatically render him an unreliable source. *See Steele*, 353 F. App'x at 910 ("Although the informant in this case was a first-time informant, she earned Officer White's trust by identifying multiple drug dealers that Officer White already knew ... [which adds] to the informant's credibility."); *see also United States v. Alvarez,* No. 4:12-CR-96, 2012 WL 5931785, at *3 (E.D. Tex. Nov. 6, 2012) (finding that a first time informant's statements established probable cause because such statements were against his/her penal interest and were later corroborated by the law enforcement's investigation). Indeed, the Fifth Circuit has made clear that an informant's "prior performance is not the only indicia of reliability." *United States v. Delario*, 912 F.2d 766, 768 (5th Cir. 1990). Again, Mr. Patino is a criminal suspect who explained to law enforcement officers that the large sum of currency found behind the driver's seat of the car he was illegally driving was from the sale of drugs; a statement given against his penal interest. This fact weighs heavily in favor of the reliability and trustworthiness of the information provided. *See United States v. McKeever*, 5 F.3d 868, 865 (5th Cir. 1993) ("The fact that the CI's statements were against his own penal interest amounts to substantial corroboration."); *accord United States v. Harris,* 403 U.S. 573, 583-84 (1971); *United States v. Mills*, No. 4:10-CR-65, 2010 WL 5855915, at *2 (E.D. Tex. Oct. 8, 2010).

Moreover, Defendant's argument that Mr. Patino's statements are uncorroborated is unpersuasive [Dkt. 37 at 2]. Mr. Patino told Agent Jasso that he knew the location where seven kilograms of methamphetamine was located [Dkt. 33-2 at 2]. One of Defendant's landlords,

Ms. Munoz-Cornelio then identified Defendant and Mr. Patino as the men who signed the lease for the apartment located at 3454 Banning Drive, Dallas, Texas. *Id.* Ms. Munoz-Cornelio's identification of Mr. Patino and Defendant, which is unaffected even if the Court assumes the Landlords' search was improper, partially corroborated Mr. Patino's statement to Agent Jasso – that he knew/had knowledge of the location. The Court finds that in the present case Mr. Patino's statements to law enforcement are sufficient to establish probable cause. This is especially so since the Landlords corroborated that Defendant lived at the apartment and Mr. Patino also frequented the location. *See United States v. Ashley*, 569 F.2d at 981 ("While there is always some difficulty in establishing the reliability of a first time informant, ... we are convinced that in the present case, the government was justified in basing a probable cause determination on [the first time informant's] tip. This is especially so since the FBI and police independently corroborated much of [the first time informant's] story.")

As the Court previously noted, a probable cause determination is a practical, common-sense decision – given all the circumstances set forth in the affidavit after redaction of the Landlords' search – that there is a fair probability contraband and/or evidence of a crime will be found in a particular place. *Cavazos*, 288 F.3d at 710. The Court finds that there would have been probable cause to support the issuance of the warrant – based on Mr. Patino's statements – even had the "tainted" information regarding the Landlords' search been omitted from the application.

### III. *Other Applicable Exceptions to the Exclusionary Rule*

Notwithstanding that it finds probable cause exists, the Court also addresses the Parties arguments regarding independent source, inevitable discovery, and consent herein.

### a. **The Independent Source Exception**

Defendant further contends that the independent source exception to the exclusionary rule is inapplicable here because "all sources with information about the apartment were considered by police" [Dkt. 37 at 3]. The "independent source" exception to the exclusionary rule was outlined by the Supreme Court in *Murray v. United States*, 487 U.S. 533 (1988). For the independent source doctrine to apply, the Government must show: "(1) that the police would still have sought a warrant in the absence of the illegal search; and (2) that the warrant would still have been issued (i.e., that there would still have been probable cause to support the warrant) if the supporting affidavit had not contained information stemming from the illegal search." *United States v. Runyan*, 290 F.3d 223, 235 (5th Cir. 2002) (citations omitted). Neither Party disputes that the agents in this case would have sought a warrant absent the Landlords' search. Accordingly, the Court does not address the first prong of the independent source doctrine. To establish the second requirement, the Government need not offer subjective proof that the magistrate would have issued the warrant. Instead, it must show that, purged of taints, the warrant contains sufficient evidence to constitute probable cause for its issuance. *See Untied States v. Restrepo*, 966 F.2d 964, 970 (5th Cir. 1992). If the Government meets its burden, the taint is removed from the warrant, and the evidence seized pursuant to the warrant is not subject to being suppressed. *See Runyan*, 290 F.3d at 237 ("[B]ased on our determination that the warrants were issued independently of the prior illegal search, we find that any additional

evidence obtained pursuant to these warrants is not the 'fruit of the poisonous tree' and is therefore admissible.").

As set forth above, the search warrant affidavit, once purged of all the information relating to the Landlords' search, contains sufficient probable cause to support the issuance of the warrant. Mr. Patino agreed to cooperate with law enforcement, made statements against his penal interest, and a portion of those statements were later corroborated by the Ms. Munoz-Cornelio and Ms. Solis. The Government has established that the independent source doctrine purges any taint from the warrant.

### b. *The Inevitable Discovery Exception*

The Government also argues that the inevitable discovery exception to the exclusionary rule applies in this case [Dkt. 33 at10]. For the inevitable discovery exception to the exclusionary rule to apply, the government must prove by a preponderance of the evidence that "(1) there is a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct and (2) the Government was actively pursuing a substantial alternate line of investigation at the time of the constitutional violation." *United States v. Lamas*, 930 F.2d 1099, 1102 (5th Cir. 19991). The Court finds that both factors are present in this case: (1) the evidence initially found by the Landlords' search would have subsequently been found by law enforcement officials pursuant to the search warrant; and (2) the law enforcement officers were actively pursuing a search warrant at the time the Landlords were searching the apartment. Thus, the inevitable discovery of the methamphetamine would make it admissible despite the Landlords' search. *See id*. at 1103 (holding that evidence acquired as a result of a warrantless search was admissible under the inevitable discovery doctrine because there was probable cause at the time the evidence was seized and a police officer had left the

premises to obtain a warrant); *United States v. Swan*, 259 F. App'x 656, 661 (5th Cir. 2007) (weapons and drugs from a possibly illegal search would have been inevitably discovered during an inventory search of the car).

### *c.*     *Consent*

The Government also contends that the Landlords' search of Defendant's apartment did not violate Defendant's Fourth Amendment rights because Mr. Patino had apparent authority to consent to the search of the apartment [Dkt. 33 at 12]. A person has a reasonable expectation of privacy in the sanctuary of his home and is entitled to Fourth Amendment protection. *Katz v. United States*, 389 U.S. 347 (1967). The warrantless search of an area in which Defendant has a privacy interest is *per se* unreasonable, unless the Government can show that an exception applies. *Id*. at 357. "Valid consent is one of the exceptions to the warrant requirement; therefore, a warrantless search violates no Fourth Amendment right or protection if conducted pursuant to valid consent." *United States v. Corral*, 339 F. Supp. 2d 781, 789 (citing *United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995)). When the government seeks to justify a warrantless search on the theory that consent was lawfully obtained from a third party the government bears the burden of proving that the third party had either actual or apparent authority to consent. *See United States v. Jaras,* 86 F.3d 383, 389 (5th Cir. 1996) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 186-87 (1990)). In order to show that a third party had actual authority to consent, the government must demonstrate "mutual use of the property by persons generally having joint access or control for most purposes." *Id*. "To establish that a third party had apparent authority to consent, however, the government need demonstrate only that the officers reasonably believed that the third party was authorized to consent." *Id*.

The Government's argument that Mr. Patino had apparent authority to consent is unpersuasive. Mr. Patino and Defendant both signed the lease; however, the Landlords specifically advised the law enforcement officers that Mr. Patino did not live there, but only frequently picked Defendant up from the apartment [Dkt. 33 at 14]. Additionally, at Hearing, Agent Jasso testified that even though both Mr. Patino and Defendant were on the lease, he felt uncomfortable with Mr. Patino's consent, had doubts regarding its sufficiency, and wanted to wait until obtaining a search warrant to enter the apartment. In light of Agent Jasso's testimony, the Court finds that Mr. Patino did not have apparent authority to consent to the search of Defendant's apartment.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court recommends Defendant Ivan Silva Mendoza's Motion to Suppress Evidence [Dkt. 29] be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United*

*Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 17th day of March, 2016.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE